UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11283-RGS

KENNETH F. ZEGHIBE

v.

CONOCOPHILLIPS COMPANY

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

June 21, 2011

STEARNS, D.J.

In this admiralty case, plaintiff Kenneth F. Zeghibe brings suit against his former employer, ConocoPhillips Company (ConocoPhillips), seeking damages for personal injury under the Jones Act and the doctrines of unseaworthiness and maintenance and cure. Presently before the court is ConocoPhillips' motion for summary judgment. The court heard oral argument on June 8, 2011.

BACKGROUND

In 1992, Zeghibe, who holds a Master Mariner License, became a Captain in the marine division of Atlantic Richfield Company (ARCO). Compl. ¶ 6. In the late 1990s, Zeghibe was seconded by ARCO to Polar Tankers, Inc., which had been contracted to build five specially designed double-hull tankers intended for the transport of Alaskan crude oil. *Id.* ¶¶ 7-8. Through a series of corporate mergers,

Polar Tankers, Inc., became a wholly owned subsidiary of ConocoPhillips, and in 2002, Zeghibe became a ConocoPhillips employee. *Id*. ¶ 9; Zeghibe Dep. Tr. at 36. The tanker construction mostly took place at the Avondale shipyard in Louisiana, where Zeghibe had a trailer office. Pl.'s Statement of Facts (SOF) ¶ 3. Zeghibe was also involved in post-construction work as the tankers were berthed variously in Pascagoula, Mississippi; the Bahamas; Portland, Maine; and El Ferrol, Spain. *Id*.

Zeghibe asserts that in 2004, as a result of workload stress, a "deterioration in [his] condition began to manifest," and "his marriage began to suffer severely." Compl. ¶¶ 24-25; Zeghibe Dep. Tr. at 66, 178-179. In the fall of 2005, Zeghibe and his wife began seeing a marriage counselor. *Id*. at 68. Zeghibe's manager, David Tuturea, allowed Zeghibe to take long weekends in order to fly from the Avondale shipyard to his home in Barnstable County, Massachusetts, so that he could attend counseling sessions. *Id*. at 78-79; Compl. ¶ 39. After a few months, Zeghibe abandoned the marriage counseling in light of his work commitments. Zeghibe Dep. Tr. at 79, 125-128.

On June 22, 2006, Zeghibe captained the maiden voyage of the POLAR ENTERPRISE from Avondale, Louisiana, to Pascagoula, Mississippi. On June 27, 2006, Captain Douglas Lamson relieved Zeghibe, who left for his home in Massachusetts. Zeghibe Dep. Tr. at Ex. 8A; Compl. ¶ 42. Three days later, Lamson

sailed the POLAR ENTERPRISE to El Ferrol, Spain. Zeghibe Dep. Tr. at Ex. 8A. On July 11, 2006, Zeghibe flew from Massachusetts to El Ferrol to assist Lamson in the tending of the POLAR ENTERPRISE, including oversight of the painting of the ship. *Id*. at 164, 207-208. On July 19, 2006, Zeghibe took over Lamson's duties as captain of the POLAR ENTERPRISE, which was then tied up at a dock for repairs. *Id*.

On July 31, 2006, Zeghibe took paid leave and returned to Massachusetts. Zeghibe claims that "[b]ecause of the stresses of being away from home for extended periods, being denied the leave to which he was entitled and the resulting breakdown in his marriage, he believed that he was going home to a divorce." Pl.'s Opp'n Mem. at 10. On September 2, 2006, while Zeghibe was still at home, he suffered a "breakdown." He "broke down into tears" and experienced "[a] total loss of control." Zeghibe Dep. Tr. at 143, 151. Zeghibe alleges that since 2006, he has suffered from extreme emotional distress and seizure-like episodes that have made it impossible for him to work. *Id*. at 338; Compl. ¶¶ 80-81. In February of 2007, Zeghibe separated from his wife and asked for a divorce. *See* Zeghibe Dep. Tr. at Ex. 1 ¶ 9.[1]

---

[1] At his deposition, Zeghibe stated that the divorce "was a mutual agreement done during the marriage counseling." Zeghibe Dep. Tr. at 82. This testimony contradicts the affidavit that he filed in proceedings before the Massachusetts Probate and Family Court. *See* Zeghibe Dep. Tr. at Ex. 1 ¶ 9 (stating, "Ms. Zeghibe admits it was I who asked for a divorce and initiated our separation in February 2007.").

On July 30, 2009, Zeghibe brought suit against ConocoPhillips, alleging personal injury claims under the Jones Act, and general maritime claims of unseaworthiness and maintenance and cure. On April 4, 2011, ConocoPhillips filed the instant motion, arguing that Zeghibe's claims should be dismissed because: (1) they are time-barred; (2) the Jones Act does not apply; (3) maritime tort jurisdiction is lacking; and (4) the claims are not supported by medical causation.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986). The moving party bears the burden of establishing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

**I. Statute of Limitations**

ConocoPhillips first argues that the three-year maritime statute of limitations bars Zeghibe's suit. "In an admiralty case, maritime law and the equitable doctrine of laches

4

govern the time to sue. When applying the doctrine of laches, the court examines whether plaintiff's delay in bringing suit was unreasonable and whether defendant was prejudiced by the delay." *TAG/ICIB Servs., Inc. v. Pan Am. Grain Co.*, 215 F.3d 172, 175 (1st Cir. 2000) (internal citations omitted).

> In the maritime context, a laches analysis utilizes as a benchmark the limitations period contained in the most analogous statute. That limitations period is not per se dispositive, but rather courts rely upon it to establish burdens of proof and presumptions of timeliness and untimeliness. Hence, 'if a plaintiff files a complaint within the analogous statutory period, the burden of proving unreasonable delay and prejudice falls on the defendant. If a plaintiff files after the statutory period has expired, the burden shifts and a presumption of laches is created.' The analogous limitation period can be located either in state or federal law. *See, e.g.*, . . . *Giddens v. Isbrandtsen Co.*, 355 F.2d 125, 127 (4th Cir. 1966) (applying federal Jones Act statute of limitations to maritime tort).

*TAG/ICIB Servs.*, 215 F.3d at 175-176 (internal citations omitted).

Here, the relevant statute is 46 U.S.C. § 30106, which states: "Except as otherwise provided by law, a civil action for damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose." *See also McKinney v. Waterman S.S. Corp.*, 925 F.2d 1, 2 n.2 (1st Cir. 1991) ("A three-year limitations period is thus clearly applicable to the Jones Act and maritime unseaworthiness tort counts."); *Butler v. Am. Trawler Co.*, 887 F.2d 20, 22 (1st Cir. 1989) ("[U]nder federal law, a plaintiff may not begin a personal injury action, based upon a maritime tort, more than 'three years from the date the cause of action

5

accrued' . . . .").

ConocoPhillips notes that the Complaint alleges that in 2004, a "deterioration in Zeghibe's condition began to manifest," and "his marriage began to suffer severely." *See* Compl. ¶¶ 24-25; Pl.'s SOF ¶ 14. ConocoPhillips argues that the manifestations of his deteriorating condition and failing marriage are injuries that would have been discovered immediately by Zeghibe in 2004, triggering the three-year statute of limitations.[2] *See McKinney*, 925 F.2d at 2 (agreeing with the district court's finding that "'[b]ecause McKinney's injury was of the sort discovered immediately, his cause of action accrued when he was injured'").

Zeghibe argues that his cause of action accrued at the time of his breakdown on September 2, 2006, and thus, the Complaint was timely filed on July 30, 2009. Whether Zeghibe should have recognized the onset of his injuries prior to his breakdown is a question of fact for the jury. *See Pretus v. Diamond Offshore Drilling, Inc.*, 571 F.3d 478, 484-486 (5th Cir. 2009) (holding that issues of fact existed as to when an offshore drilling rig worker should have discovered the seriousness of his

---

[2] Zeghibe testified that in 2004, he "was extremely overworked and tired" and "was having migraine headaches." Zeghibe Dep. Tr. at 177-179. Dr. Bruce Price, Chief Neurologist at McLean Hospital, testified that Zeghibe told him that he had begun experiencing shaking spells in July of 2006. Price Dep. Tr. at 11-13. Thus, there is some third-party evidence that Zeghibe was aware of his symptoms prior to his breakdown on September 2, 2006.

6

medical condition, precluding summary judgment on statute of limitations grounds on the worker's Jones Act and general maritime law claims); *see also Crisman v. Odeco, Inc.*, 932 F.2d 413, 415 (5th Cir. 1991) ("A cause of action under the Jones Act and general maritime law accrues when a plaintiff has had a reasonable opportunity to discover his injury, its cause, and the link between the two."). At the very least, genuine issues of material fact exist as to (1) when Zeghibe should have recognized the grounds for a cause of action; and (2) whether any delay by Zeghibe in bringing suit was unreasonable and prejudicial to ConocoPhillips.[3]

## II. Jones Act Claim

ConocoPhillips next argues that Zeghibe's Jones Act claim should be dismissed because he was not a "seaman" at the time his alleged injuries occurred. The Jones Act[4] provides seamen with an action for damages at law "where an employer's failure

---

[3] At oral argument, counsel for ConocoPhillips conceded that the statute of limitations does not bar Zeghibe's claims arising from his September 2, 2006 breakdown.

[4] The Jones Act states:

> A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

7

to exercise reasonable care causes a subsequent injury even where the employer's negligence did not render the ship unseaworthy." *Ferrara v. A. & V. Fishing, Inc.*, 99 F.3d 449, 453 (1st Cir. 1996), citing *Toucet v. Mar. Overseas Corp.*, 991 F.2d 5, 10 (1st Cir. 1993).

A worker seeking seaman status under the Jones Act must "prove that his duties contributed to the vessel's function or mission, and that his connection to the vessel was substantial both in nature and duration." *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 494-495 (2005), citing *Chandris, Inc. v. Latsis*, 515 U.S. 347, 376 (1995). "The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury. Nevertheless, 'summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.'" *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997), quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991).

Zeghibe argues that he qualifies as a seaman because he served as a sea captain in ConocoPhillips' fleet of tankers, and remained a ship's master throughout his

---

46 U.S.C. § 30104.

extended "special assignment" with the Polar Tankers construction project.[5] His responsibilities included conducting sea trials on the vessels as they neared completion, and captaining the vessels between ports. Pl.'s SOF ¶¶ 1, 23.[6] However, Zeghibe admitted in his deposition that "the majority" of his work involved "construction" of the vessels, as opposed to time at sea. Zeghibe Dep. Tr. at 41. ConocoPhillips calculates that Zeghibe was at sea for only 95 days over a five-year period starting in 2001. Def.'s Reply Mem. at 3. In 2006, Zeghibe spent "at most" 17 days at sea, or 9.9 percent of the total number of days he worked in 2006. Def.'s Mem. at 10. Under the "rule of thumb" approved by the Supreme Court in *Chandris*, because Zeghibe spent almost all of his time assigned to land-based construction tasks, he does not qualify as a Jones Act seaman. *See Chandris*, 515 U.S. at 371 (adopting the Fifth Circuit's temporal rule of thumb that in the ordinary case, "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act").

---

[5] At oral argument, counsel for Zeghibe noted that there is no evidence that Zeghibe was a longshoreman, thus precluding any potential alternative recovery under the Longshore and Harborworkers' Compensation Act (LHWCA), 33 U.S.C. § 905(b).

[6] Zeghibe also asserts that ConocoPhillips "treated him as a seaman, paying maintenance and cure." Pl.'s Opp'n Mem. at 10. As ConocoPhillips notes, this evidence is not admissible under Fed. R. Evid. 409 ("Evidence of furnishing or offering or promising to pay medical, hospital, or similar expenses occasioned by an injury is not admissible to prove liability for the injury.").

Even if this court were to disregard the thirty percent rule of thumb, Zeghibe still would not qualify for seaman status under the Jones Act because he was at home and on leave from work at the time of his breakdown, and by his own admission, was not exposed to the perils of the sea. *See* Zeghibe Dep. Tr. at 170-176; Pl.'s SOF ¶¶ 32, 43, 45. *Cf. Papai*, 520 U.S. at 560 ("Jones Act coverage is confined to seamen, those workers who face regular exposure to the perils of the sea."). While at home, Zeghibe was "[a]bsolutely not" capable of performing the duties of a master. Zeghibe Dep. Tr. at 154-155. Thus, he was not contributing to "the ship's work."[7] *See Wilander*, 498 U.S. at 355 ("[T]he requirement that an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission' captures well an important requirement of seaman status.").

Zeghibe argues that because his name remained on the Articles of Agreement as master of the POLAR ENTERPRISE from July 19, 2006, to October 23, 2006, he believed that he remained legally responsible for the vessel.[8] Zeghibe Dep. Tr. at 171-

---

[7] Zeghibe asserts that while at home, "he had to help another member of the crew by telephone guide a tanker from the bay in El Ferrol, Spain into the dry-dock." Pl.'s Opp'n Mem. at 13. This call, however, occurred after Zeghibe's breakdown on September 2, 2006, and he does not recall any other conversations related to the functioning of the vessel while he was at home in Massachusetts. *See* Zeghibe Dep. Tr. at 189-190, 228.

[8] Zeghibe acknowledges that ConocoPhillips and Polar Tankers President, George McShea, dispute the assertion that he remained on Articles while at home.

172, Ex. 4. Pl.'s SOF ¶ 35. Zeghibe's personal definition of a "seaman" as one who is "[o]n the articles," *id*. at 141-142, however, is not supported by case law or by the text of the Jones Act. *See* 46 U.S.C. § 30104.

### III. General Maritime Law Claims

ConocoPhillips next argues that because Zeghibe's breakdown occurred while he was at home in Massachusetts, there is no maritime tort jurisdiction. To assert general maritime jurisdiction over a tort under 28 U.S.C. § 1333(1), a party must satisfy both a location and a connection test. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). In order to satisfy the "location" or "situs" requirement, a party must show either that the injury occurred on navigable water or that the injury was caused by a vessel on navigable water. *Id*. In order to satisfy the "connection" or "nexus" requirement, the injured party must show that the type of incident involved has "'a potentially disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Id*., quoting *Sisson v. Ruby*, 497 U.S. 358, 365, 364 & n.2 (1990). *See also Florio v. Olson*, 129 F.3d 678, 680 (1st Cir. 1997) ("A party wishing to assert maritime jurisdiction over a tort must satisfy both

---

Pl.'s Opp'n Mem. at 11 n.18.

the 'location' and 'connection' requirements" of the two-prong test articulated in *Grubart*).

Zeghibe's claims fail the "location" test since his injury (the September 2, 2006 breakdown) occurred while he was at home in Massachusetts, approximately 3,000 miles away from the POLAR ENTERPRISE, which was then docked in Spain. *Cf. Florio*, 129 F.3d at 680 (finding that a land-based injury was not caused by a vessel on navigable water because the vessel was only "peripherally involved," and none of the plaintiff's theories of negligence directly implicated the vessel).[9]

To the extent that Zeghibe asserts other torts, which allegedly occurred during vessel construction, these claims also fail for want of jurisdiction.[10] Any purported construction-related injuries do not fulfill the *Grubart* location test because they were

---

[9] Zeghibe's claims also fail the "connection" test because his injury bears no relationship to traditional maritime activity. But, even if the court were to find that the "connection" test was satisfied, Zeghibe's maritime tort claims would still be dismissed for failure to fulfill the "location" test. *Cf. Florio*, 129 F.3d at 681 ("The 'location' requirement for maritime jurisdiction has not been met in this case because no vessel can be said to have caused Florio's injuries. We therefore need not address whether the 'connection' requirement has been satisfied, nor do we reach the merits of this case.").

[10] *See* Compl. ¶¶ 67-69 (alleging that Zeghibe "was exposed to dangerous conditions" during vessel construction).

not caused by a vessel in navigation.[11] *See Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 301 (5th Cir. 2008) (stating that "preclusion from vessel status of crafts still under construction serves several important goals"). Because general maritime jurisdiction is lacking, the court will grant summary judgment for ConocoPhillips on Zeghibe's claims under general maritime law (unseaworthiness and maintenance and cure).

**IV. Medical Causation**

Finally, ConocoPhillips argues that even if Zeghibe were deemed to be a seaman under the Jones Act, he has failed to prove that his injuries are causally related to ConocoPhillips' conduct.[12] "A plaintiff's burden of proving causation under the Jones Act is 'featherweight.' Liability exists if the employer's negligence contributed even in the slightest to the plaintiff's injury." *Toucet*, 991 F.2d 5 at 10 (internal citation omitted). *See also Poulis-Minott v. Smith*, 388 F.3d 354, 366 (1st Cir. 2004).

---

[11] During Zeghibe's time in Spain, the POLAR ENTERPRISE never left the dock. *See* Zeghibe Dep. Tr. at 130.

[12] ConocoPhillips asserts that the superseding cause of Zeghibe's breakdown was a scream by his wife. *See* Def.'s Reply Mem. at 4-5; Def.'s SOF ¶¶ 41-42. Zeghibe testified that because his work kept him away from home, his wife had been having an affair and "screamed out" her paramour's name while she and Zeghibe were having sex in August of 2006. Zeghibe Dep. Tr. at 72-73. Zeghibe testified that his wife's scream was "part of" the events that led to his breakdown. Zeghibe Dep. Tr. at 143.

13

Zeghibe's primary care physician, Dr. Steven Flier, testified that Zeghibe's depression was caused by "[a] combination of many factors. The relative import of those can't be determined, but those factors included his marital situation, his work situation, his family history, and his medical condition." Flier Dep. Tr. at 15. Dr. Flier further testified that he did not have an opinion to a reasonable degree of medical certainty as to what caused Zeghibe's physical symptoms, including hypertension, obesity, sleep apnea, and loose bowels. *Id.* at 16-17.

Zeghibe's treating psychiatrist, Dr. Steven Locke, wrote a letter to ConocoPhillips' medical department in December of 2006, stating that "Zeghibe developed an episode of recurrent major depression that is severe, impairing his ability to work. The precipitant for this episode, based on the history, appears to be a combination of a stressful workload and long absences from the family home leading to severe marital discord." Kilpatrick Aff. at Ex. 22. At his deposition, Dr. Locke testified that

> based on [Zeghibe's] childhood and family history, I believe that he has a vulnerability to depression and that people who have a vulnerability to depression are more likely to become depressed in relationship to major life stressors such as divorce or unemployment or even a major medical illness. So, I think that the combination of those factors is the basis of his depression.

Locke Dep. Tr. at 100. Dr. Locke also testified that he did not have a causative

explanation for Zeghibe's shaking episodes. *Id.* at 76-77. Dr. Bruce H. Price, Chief Neurologist at McLean Hospital, examined Zeghibe twice and reported that his shaking spells "are not epileptic in nature, but represent a 'stress reaction.'" Kilpatrick Aff. at Ex. 13. At his deposition, Dr. Price testified that he could not explain Zeghibe's shaking spells by way of any objective neurological symptomatology. Price Dep. Tr. at 48-49.

As ConocoPhillips points out, none of Zeghibe's treating physicians testified that his symptoms are attributable to negligence or specific actions by ConocoPhillips. Thus, it is unclear whether negligence by ConcoPhillips "contributed even in the slightest" to Zeghibe's injury. *Cf. Toucet*, 991 F.2d at 10 (finding that sufficient evidence was introduced to support the jury's determination that a seaman's employer was negligent in requiring him to continue working despite his claims of exhaustion and inadequate assistance, and that this negligence contributed to the seaman's back injury); *Perez v. Marine Transp. Lines, Inc.*, 661 F.2d 254, 255 (1st Cir. 1979) (finding sufficient evidence to support the district court's conclusion that recurrence of the plaintiff's hernia was a direct consequence of the unseaworthiness of the vessel and the defendants' negligence). The court, however, need not resolve the causation issue on summary judgment (indeed, it is doubtful if it could decide the issue as a matter of law even in light of the seeming failure of proof on Zeghibe's part) as jurisdiction is clearly

15

lacking under either the Jones Act or general maritime law.

ORDER

For the foregoing reasons, ConocoPhillips' Motion for Summary Judgment is ALLOWED.  The Clerk will enter a dismissal with prejudice and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE